R. W. McDONNELL and First National Bank in Dallas, Appellants,

v.

CAMPBELL–TAGGART ASSOCIATED BAKERIES, INC., and Marie R. Skogsberg, Appellees.

No. 16250.

Court of Civil Appeals of Texas.

Dallas.

March 6, 1964.

Coke & Coke, J. Edwin Fleming and Frank G. Newman, Dallas, for appellants.

Scurry, Scurry & Hodges, Dallas, for appellees.

DIXON, Chief Justice.

Our former opinion is withdrawn and this opinion is substituted therefor.

This is an appeal from an order for a temporary injunction awarded to appellee Mrs. Marie Skogsberg enjoining Campbell-Taggart Associated Bakeries, Inc. and appellants R. W. McDonnell and First National Bank in Dallas from transferring, selling or in any manner attempting to dis-

pose of 5200 shares of capital stock of Campbell-Taggart Associated Bakeries, Inc. as represented by Certificate No. 2507. Campbell-Taggart did not appeal.

This litigation began with the filing on December 5, 1962 by McDonnell of a suit against Campbell-Taggart for damages in the amount of $116,350.00 for conversion of the shares of stock. McDonnell alleged that the stock had been transferred to him by Mrs. Marie Skogsberg in compliance with the provisions of the Uniform Stock Transfer Act, Art. 1302–6.01 et seq., Vernon's Ann.Civ.St., but that Campbell-Taggart had nevertheless refused to transfer said stock to his name on its records.

On December 20, 1962 Mrs. Marie Skogsberg filed a petition in intervention in which she alleged that she was still the owner of the 5200 shares of stock represented by Certificate No. 2507; that on or about June 27, 1962 she delivered the certificate to McDonnell to use only as collateral security for a loan of $60,000.00 to be made to McDonnell by First National Bank in Dallas; that the stock was not to be transferred or sold by McDonnell; and that she was to continue to receive dividends and bonuses from the stock for a period of two years.

In her intervention Mrs. Skogsberg also alleged that a supplementary written agreement she was induced to sign was not the written agreement she had originally read and agreed to, but was a different writing which had been fraudulently substituted by McDonnell for the original agreement, which substituted agreement purported to be a contract for the exchange of her 5200 shares of stock in Campbell-Taggart for 15,600 shares of stock in Texas Boat Manufacturing Company, wholly owned by McDonnell. She prayed for judgment for title and possession of the Campbell-Taggart stock and for an injunction pending suit.

On the day she filed her plea in intervention Mrs. Skogsberg was granted an ex parte order restraining McDonnell and Campbell-Taggart from selling or otherwise disposing of the 5200 shares of stock and from transferring said shares on the books of Campbell-Taggart.

On December 27, 1962 Mrs. Skogsberg filed her amended petition in intervention in which she made First National Bank in Dallas a third party defendant. In her amended pleading she stated that she had learned that Certificate No. 2507 was in the hands of First National Bank in Dallas as collateral security for a loan in a substantial amount of money made by said bank to R. W. McDonnell. On the same day she was granted an ex parte restraining order against the Bank.

On March 6, 1963 following a hearing an order was signed granting Mrs. Skogsberg the temporary injunction which is the subject of this appeal by McDonnell and the Bank.

### FACTS

Neither Mrs. Marie Skogsberg nor R. W. McDonnell is a novice in the business world. Mrs. Skogsberg's husband, a former vice-president of Campbell-Taggart, died in 1949. Mrs. Skogsberg has varied business interests. She owns and supervises a ranch, a small resort hotel and rental properties in Colorado and Oklahoma. She owns some farms in Oklahoma. She also owns or has owned oil interests in Oklahoma, Nebraska and Texas. When asked whether she owned 30,000 shares of stock in Campbell-Taggart, she answered that she did not know how many shares she owned. She values her Campbell-Taggart stock at $30.00 per share. She is vice-president of a bank in Buena Vista, Colorado, which bank she helped organize and she helped sell its shares of stock. She had reserved 300 shares of this original bank stock for her friend, R. W. McDonnell, but he failed to take up the stock.

R. W. McDonnell organized the Lone Star Boat Company a few years ago. In 1959 he sold the company for $2,000,000.00. He now owns and operates the Texas Boat Manufacturing Company. He owns oil interests in Texas.

On June 27, 1962 Mrs. Skogsberg delivered three documents to McDonnell: (1) Stock Certificate No. 2507, representing 5200 shares of stock in Campbell-Taggart; (2) a stock power of attorney authorizing a transfer agent to transfer the stock on the books of Campbell-Taggart; and (3) a written supplemental agreement whereby she agreed to transfer the Campbell-Taggart stock to McDonnell in exchange for 15,600 shares of stock in McDonnell's Texas Boat Manufacturing Company, represented by Stock Certificate No. 5. In this last document Mrs. Skogsberg reserved unto herself all cash and stock dividends and bonuses for two years, which McDonnell was to pay over to her promptly upon his receipt of same. It further provided that each of the parties should have an option to repurchase the shares of stock within two years.

The First National Bank in Dallas had previously done business with both McDonnell and Mrs. Skogsberg, having loaned large sums of money to each of them. On September 24, 1962, M. F. Richardson, a vice-president of the Bank, wrote a letter to Mrs. Skogsberg in Buena Vista, Colorado in which he said:

> "It has been brought to my attention that the stock power which you furnished to Mr. R. W. McDonnell in connection with the transfer to him of 5200 shares of Campbell-Taggart Associated Bakeries, Inc. was properly signed but not in form to where the certificate became negotiable either for transfer into his name or for a pledge as collateral. * * * To correct the oversight, I have prepared and attach hereto a substitute power of attorney. It will be appreciated if you could sign this and secure the bank guarantee of your signature and return to me at your earliest convenience."

Mrs. Skogsberg had left Colorado to return to her home in Oklahoma City, so Richardson's letter did not reach her until October 8, 1962.

Upon receipt of the above letter Mrs. Skogsberg called Richardson by long distance telephone from Oklahoma. She expressed surprise upon learning that the Bank did not have possession of the stock certificate, which she said was given to McDonnell to be placed "in trust" with the Bank. She stated that by "in trust" she meant that the certificate was to be turned over to the Bank as collateral security for a loan to be made by the Bank to McDonnell. The stock was not supposed to be transferred to McDonnell on the books of Campbell-Taggart. Mrs. Skogsberg refused to sign the new stock power which Richardson had sent to her with the letter.

On October 8, 1962 Mrs. Skogsberg sent Richardson a telegram as follows:

> "CAMPBELL TAGGART STOCK CERTIFICATE #2507 IS IN TRUST ONLY AND NOT TO BE TRANSFERED. YOUNG COUNTY LEASE DEAL NOT COMPLETED SO I WILL NOT BE RENEWING THE NOTE WHICH IS DUE ON THE 10TH"

Richardson later testified that he had never heard of the Young County deal. Mrs. Skogsberg also testified that she had never told him about it. The mention of a note "which is due on the 10th" referred to a note for $41,820.00 dated February 10, 1962, due October 10, 1962, executed by Mrs. Skogsberg payable to R. W. McDonnell, which note McDonnell had assigned to the Bank.

On October 10, 1962, Wigley, a stock-broker with E. F. Hutton & Company, called Richardson and said that McDonnell had brought the stock certificate to Hutton & Company and wanted to sell it. Richardson told Wigley that Mrs. Skogsberg was making some kind of a claim that the stock was not to be sold. Wigley refused to accept the certificate for sale. Wigley called Mrs. Skogsberg by long distance telephone and advised her of McDonnell's visit to Hutton & Company.

Soon thereafter Mrs. Skogsberg sent a telegram to Campbell-Taggart to stop the transfer of the 5200 shares represented by Stock Certificate No. 2507.

On November 30, 1962 McDonnell and Texas Boat Manufacturing Company owed the Bank $65,000.00. On the above date the Bank increased the amount of the loan by $45,000.00 making the total indebtedness $110,000.00. This note was signed by Mc-Donnell individually and in behalf of Texas Boat Manufacturing Company. The Bank on the same day accepted the three documents as collateral security for the indebtedness.

On December 20, 1962 Mrs. Skogsberg filed her Plea in Intervention in the suit McDonnell had filed against Campbell-Taggart on December 5, 1962. In this pleading Mrs. Skogsberg alleged for the first time, so far as this record shows, that the supplemental agreement which she signed was not the instrument which had first been presented to her and which she had agreed to sign. She pled that the original agreement did not provide for her to receive any Texas Boat Manufacturing Company stock. It merely provided that the Campbell-Taggart certificate be used by McDonnell as collateral security for a loan of $60,000.00 from the Bank.

Mrs. Skogsberg's testimony in regard to this matter is not as explicit and positive as her pleading. She testified that she did not remember whether the first agreement limited the loan to be made to McDonnell to $60,000.00. As to whether a new and different agreement had been substituted for the one she intended to sign, she testified as follows:

"Question: Mrs. Skogsberg, I will ask you if this is the agreement which you had previously read before Mr. McDonnell went into the other room to get another fountain pen?

"Answer: *I don't think it is.*

"Question: What makes you think it isn't the same agreement?

"Answer: Why would I buy something—why would I buy something back? * * *

* * * * * *

"Question: What I'm asking you Mrs. Skogsberg, is, was this the agreement that you signed? Was that the agreement you had previously read a few minutes before?

"Answer: *Not in my opinion, it wasn't.*

"Question: In the agreement that you had previously read, you and Mr. McDonnell read it together with Mrs. Belcher present, was anything said in that agreement about any Texas Boat Company stock?

"Answer: *I don't think so.*" (Emphasis ours.)

However, Mrs. Skogsberg's testimony is very clear as to her purpose and intention in signing a supplemental agreement regardless of whether it was the original agreement or the alleged fraudulently substituted agreement. She stated repeatedly that it was her intention that R. W. McDonnell should use the stock as collateral security for a loan by the Bank to McDonnell. We quote a part of her testimony on this subject:

"Answer: The deal was that I was to loan him the stock certificates so that he could borrow some money on it at the First National Bank in trust with Mr. Richardson and the First National Bank * * *.

* * * * * *

"Question: You are familiar with the mechanics of pledging stock as collateral for security aren't you? You've done this before, this wasn't something new to you?

"Answer: I have done it, yes.

"Question: You have other business interests and you have borrowed money before at banks and you do business

with the First National Bank in Oklahoma City, don't you?

"Answer: That's right.

\* \* \* \* \* \*

"Question: In other words,—I want to go a little further. Another question was asked you. Q: Did you know that the bank would be in a position to foreclose on it? A: Oh, of course, I did.

"Answer: Yes, anybody would know that.

\* \* \* \* \* \*

" ' \* \* \* Question: Would this be a correct statement, that under either the signed agreement, Plaintiff's exhibit four, which we have here— \* \* \*—or under the other agreement which you state you thought you were signing that it was your intention for Mr. McDonnell to be able to pledge this stock as security to borrow money? Answer: That is right.' "

Mrs. Skogsberg testified that the Bank had never done anything with her stock other than to take it as collateral. There is no evidence in the record that Mrs. Skogsberg ever informed the Bank of her claim that there had been a fraudulently substituted agreement until she filed her amended plea in intervention on December 27, 1962, which was after the Bank had made the loan to McDonnell.

McDonnell in his testimony denied that there had been any substituted agreement. He says that Mrs. Skogsberg knew of his success with the Lone Star Boat Company and insisted on exchanging Campbell-Taggart stock for stock in McDonnell's new company.

M. F. Richardson, Vice-President of the Bank, testified that he did not know until July of 1962 that McDonnell held the 5200 shares of Campbell-Taggart stock. At that time McDonnell showed him the certificate and the stock power but did not attempt to use them as collateral security for a loan from the Bank.

Richardson's testimony corroborates that of Mrs. Skogsberg that she wanted the Bank to have the Campbell-Taggart stock as collateral security for a loan to McDonnell. We quote Richardson's testimony:

"Question: Up to the time of making that additional loan of $45,000.00 to the Texas Boat Manufacturing Company, had Mrs. Skogsberg ever indicated to you that she didn't want the bank to hold any of her stock as collateral for his loan?

"Answer: On the contrary, in her conversation with me in October, she was anxious that the bank have it. \* \* \* and she stated to me that that was the purpose of it, that it be held by us as collateral \* \* \*."

## OPINION IN RE McDONNELL

We have concluded that the judgment insofar as it awards a temporary injunction against R. W. McDonnell should be affirmed.

Art. 1302–6.08 V.A.C.S., entitled "Texas Miscellaneous Corporation Laws Act", expressly provides that a court may enforce specifically a right to reclaim possession of a stock certificate, or to rescind the transfer thereof, and pending litigation may enjoin the further transfer of the certificate, or impound it if the indorsement or delivery of the certificate was procured by fraud or duress.

Mrs. Skogsberg's pleadings and her testimony are to the effect that McDonnell procured the transfer to him of Certificate No. 2507 by fraud in that McDonnell substituted a different written agreement for the agreement which Mrs. Skogsberg had read and which she thought she was signing.

In their first point on appeal appellants charge that Mrs. Skogsberg failed to plead or prove that she had no adequate remedy at law and that she would suffer irreparable injury, therefore the injunction should have been denied. We find ourselves un-

able to agree with appellants insofar as R. W. McDonnell is concerned.

If it be held that Mrs. Skogsberg was required to plead and offer evidence that she has no adequate remedy at law or that McDonnell is insolvent, then her position is not strong. In her amended plea Mrs. Skogsberg alleges that McDonnell is attempting to sell and transfer said stock and unless restrained will sell and transfer said stock to an innocent purchaser in which event she might suffer irreparable damage for which she would have no adequate remedy at law. She testified that the 15,600 shares of stock in Texas Boat Manufacturing Company which were transferred to her are worthless. There is also testimony in the record that the Bank would not lend any additional money to McDonnell unless the loan should be secured by a pledge of the stock represented by Stock Certificate No. 2507—this, although McDonnell in 1962 had filed a financial statement with the Bank claiming a net worth of approximately $1,307,000.00. There is no direct evidence that McDonnell is insolvent.

■ Appellants' view is that though Art. 1302–6.08 V.A.C.S. authorizes the issuance of an injunction, the statute is not to be interpreted as eliminating the necessity for a showing of an inadequate remedy at law. No case has been cited to us so construing Art. 1302–6.08. But appellants do cite Powers v. Temple Trust Co., 124 Tex. 440, 78 S.W.2d 951, in which Subdivisions 1 and 2 of the general injunction statute, Art. 4642, V.A.C.S., are construed. It is held that said subdivisions did not give a statutory right to injunction where there is an adequate remedy at law. Appellants contend that such holding is equally applicable to Art. 1302–6.08 V.A.C.S. In our opinion the holding in the Powers case does not control our decision here.

■ Art. 1302–6.08 is specific. It expressly grants to a defrauded party a right to reclaim possession of a stock certificate where indorsement or delivery has been procured by fraud. We find nothing in the wording of the statute to suggest that the Legislature meant that a defrauded party would be compelled to look to the remedy of damages if the defrauding party is solvent. The statute also very explicitly gives the defrauded party a right of rescission. We do not believe that the Legislature intended that the owner of corporation stock must sit by helplessly and be compelled to resign himself to the fraudulent loss and confiscation of his stock simply because the fraudulent wrongdoer is able to pay the market price of the stock as damages. Such a remedy is not adequate for a person who wants to keep his stock rather than to sell it at the market price.

■ Of course it is well established as a principle of equity that ordinarily injunctive relief will not lie if there is an adequate remedy at law. Innumerable court decisions could be cited in support of the principle. But also many decisions could be cited to the effect that the purpose of a temporary injunction is simply to maintain the *status quo* until a controversy can be decided in a trial on the merits. As pointed out in Moore v. Duggan Abstract Co., et al, Tex.Civ.App., 154 S.W.2d 519, there are instances when a temporary injunction is proper without a showing of irreparable damage or inadequate remedy at law. See also Lowe & Archer, "Texas Practice", under the title "Injunctions", Sec. 314, Page 321.

■ Appellants contend that Mrs. Skogsberg's amended plea asks for damages, not rescission. The pleading is not as clear as it could be. But we think it unquestionably tracks the statute in alleging fraud in the procurement of Mrs. Skogsberg's indorsement and in praying for repossession of Certificate No. 2507. Though she does not use the word rescission we believe her pleading properly interpreted includes rescission. She alleges that she demanded return of Certificate No. 2507 representing the 5200 shares of stock and tendered back to McDonnell the 15,600

shares of stock in Texas Boat Manufacturing Company. She prays judgment for title and possession of the certificate and for all rights and interests in the 5200 shares of stock and all dividends and interests which may accrue pending trial on the merits. The only basis for calling her suit an action for damages is a statement at the end of her prayer where, after asking judgment for title and possession, etc. as above set out, she prays for any and all damages sustained by her by reason of such conversion. This statement comes after her prayer for title and possession and does not destroy the nature of her action for title and possession.

We cannot say that the trial court abused its discretion in issuing the temporary injunction against McDonnell. Appellants' first point is overruled.

### OPINION IN RE FIRST NATIONAL BANK

The position of the Bank is quite different from that of R. W. McDonnell. In its second and third points on appeal the Bank alleges that (2) it is a holder in due course of the stock pledged as security and (3) Mrs. Skogsberg intended that R. W. McDonnell pledge the stock as collateral security for a loan, therefore Mrs. Skogsberg has no right to interfere with the Bank's rights as pledgee of the stock. We agree with the Bank on these two points.

Mrs. Skogsberg does not charge the Bank with fraud. She herself testified that she intended for Certificate No. 2507, representing 5200 shares of stock, to be used as collateral to enable McDonnell to obtain an additional loan from the Bank. This is exactly the basis on which the Bank now holds possession of the certificate. Mrs. Skogsberg herself testified that the Bank had made no attempt to do anything with the stock other than to accept it as collateral. She had no conversation with the Bank as to the purpose for which any loan to McDonnell might be limited. She knew that if the stock was pledged to the Bank

as security, the Bank could foreclose on the stock if McDonnell did not pay his loan. When she was informed that McDonnell was trying to sell and transfer the stock she was surprised to learn that the Bank did not already have possession of the stock as security. She did not intend that the stock should be transferred to McDonnell's name or that he should then sell and transfer it to someone else, but she did intend that he should pledge the stock with the Bank as security for a loan. She so informed the Bank. She did not testify that she told the Bank not to accept the stock as collateral. Her suit to enjoin the Bank and her pleading that the Bank had knowledge that she had been defrauded by McDonnell in procuring her indorsement were charges made long after the Bank had made the loan to McDonnell and taken the stock as security. Mrs. Skogsberg talked with Mr. Richardson at the Bank but she did not tell him that she had withdrawn her authorization for McDonnell to use the stock as collateral security for a loan. In fact she told him she wanted it to be so used and thought it had been so used.

Mrs. Skogsberg has failed utterly to present evidence that the Bank in any way participated in any fraud by McDonnell or that prior to the time the Bank made the loan Mrs. Skogsberg had withdrawn her authorization for the use of the stock as collateral for a loan. In the light of the undisputed testimony there is no basis for the issuance of a temporary injunction restraining the Bank from exercising its rights as pledgee of the stock.

We have concluded that the temporary injunction should be modified to the extent that the Bank should be left free to exercise its rights as pledgee of the Certificate No. 2507 and of the stock it represents. By this we mean to hold that the Bank may proceed to foreclose as pledgee of the stock if its loan is not paid in accordance with its terms; and Campbell-Taggert Associated Bakeries, Inc. may proceed to transfer the stock on its books should the stock be sold under foreclosure to satisfy the loan made

by the Bank to McDonnell. Further, should the stock be sold at such foreclosure sale and should the stock at said sale bring a sum in excess of the amount due the Bank, said excess proceeds will be placed in the treasury of the trial court to await the outcome of the suit on its merits. See Zanes v. Mercantile Bank & Trust Co. of Texas, Tex.Civ.App., 49 S.W.2d 922, 925, where the facts are similar in some respects to the facts in this case, and a similar order was entered as to Pierce & Company.

The decree awarding a temporary injunction is modified accordingly and as modified will be affirmed.

Affirmed as modified.