**HAGGAR APPAREL COMPANY,**
Appellant,

v.

**Maria O. LEAL, Appellee.**

**No. 13–00–275–CV.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Nov. 7, 2002.

---

Chris A. Brisack, Neil E. Norquest, Norquest & Brisack, LLP, McAllen, Jorge C. Rangel, Rangel Law Firm, Corpus Christi, for appellant.

Aaron Pena, Jr., Edinburg, John G. Escamilla, Rodriguez, Pruneda, Tovar, Calvillo & Garcia, McAllen, Armando Escamilla, Harlingen, for appellee.

Before Chief Justice VALDEZ and Justices DORSEY and RODRIGUEZ.

## OPINION

Opinion by Chief Justice VALDEZ.

Maria O. Leal brought suit against Haggar Apparel Co., her former employer, for disability discrimination, age discrimination, and retaliatory discharge. After trial, the jury found in favor of Leal on her claim for disability discrimination and awarded her $43,700 in past lost earnings and employment benefits and $8,000 in past compensatory damages. The trial court entered judgment on the verdict and awarded attorney's fees plus prejudgment and postjudgment interest. Haggar appeals this judgment by five issues. We affirm.

### *Disability Discrimination*

Leal brought suit against Haggar under the Texas Commission on Human Rights Act. *See* TEX. LAB.CODE ANN. §§ 21.001–.5566 (Vernon 1996 & Supp.2002). The act prohibits an employer from discharging or otherwise discriminating against an employee in any way based on the employee's disability. TEX. LAB.CODE ANN. § 21.051(a) (Vernon 1996). An individual may be classified as disabled under any one of three definitions in the act: (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. TEX. LAB.CODE ANN. § 21.002(6) (Vernon Supp.2002). A "major life activity" is considered to be something akin to caring for oneself, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, or working. *See Garcia v. Allen*, 28 S.W.3d 587, 596 (Tex.App.-Corpus Christi 2000, pet. denied); *Hartis v. Mason & Hanger Corp.*, 7 S.W.3d 700, 703 (Tex.App.-Amarillo 1999, no pet.).

The determination of whether an individual is disabled is necessarily fact intensive. *Garcia*, 28 S.W.3d at 596; *Primeaux v. Conoco, Inc.*, 961 S.W.2d 401, 404 (Tex.App.-Houston [1st Dist.] 1997, no writ). In determining whether an individual is disabled in a major life activity, the jury considers (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact, or the expected permanent or long-term impact, resulting from the impairment. *Garcia*, 28 S.W.3d at 596; *Norwood v. Litwin Eng'rs & Constructors, Inc.*, 962 S.W.2d 220, 224 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

When the impaired major life activity is the ability to work, the statute requires the plaintiff to show substantial limitation by proving, at a minimum, that the plaintiff is unable to work in a broad class of jobs. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Kiser v. Original, Inc.*, 32 S.W.3d 449, 453 (Tex. App.-Houston [14th Dist.] 2000, no pet.); *Garcia*, 28 S.W.3d at 599–600. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *Sutton*, 527 U.S. at 491, 119 S.Ct. 2139.

With regard to the major life activity of working, the ADA regulations explain that the term "substantially limits" means:

> [S]ignificantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as com-

pared to the average person having comparable training, skills, and abilities. The ability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3) (1996); *see Primeaux*, 961 S.W.2d at 405. Factors to consider in determining whether an individual is substantially limited in working include, but are not limited to: (1) the geographical area to which the person has reasonable access; (2) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment; and (3) the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical area from which the individual is also disqualified because of the impairment. 29 C.F.R. § 1630.2(j)(3). For example, an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs. This is so even if the individual is able to perform jobs in another class, for example, the class of semi-skilled jobs. 29 C.F.R. § 1630.2, App., § 1630(j).

■ To prevail on a "record of disability" claim, a plaintiff can show that he has a history of, or has been misclassified as having a mental or physical impairment that substantially limits one or more major life activities. *Kiser*, 32 S.W.3d at 453 (citing *Deppe v. United Airlines*, 217 F.3d 1262, 1267 (9th Cir.2000)).

■ Alternatively, an employee is also regarded as having a substantially limiting impairment if his employer mistakenly believes the employee (1) has a physical impairment that substantially limits one or more major life activities, or (2) an actual, non-limiting impairment substantially limits one or more major life activities. *Kiser*, 32 S.W.3d at 453. In both instances, it is necessary that the employer entertain misperceptions about the individual. The employer must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. *Id.*

### Standard of Review

In discrimination cases, Texas courts apply the *McDonnell Douglas* or *Burdine* burden-shifting analysis established by the United States Supreme Court. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141–42, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *M.D. Anderson Hosp. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000)(per curiam); *Tex. Dept. of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995). Under this burden-shifting analysis, the plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. *Stanley Stores, Inc. v. Chavana*, 909 S.W.2d 554, 559 (Tex.App.-Corpus Christi 1995, writ denied); *Adams v. Valley Fed. Credit Union*, 848 S.W.2d 182, 186 (Tex. App.-Corpus Christi 1992, writ denied).

If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's discharge. *Stanley Stores*, 909 S.W.2d at 560; *Adams*, 848 S.W.2d at 187–

88. If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were rather a pretext for discrimination. *Stanley Stores,* 909 S.W.2d at 560; *Adams,* 848 S.W.2d at 187–88. Despite the shifting burden of proof, the plaintiff at all times retains the ultimate burden of persuading the trier of fact. *Stanley Stores,* 909 S.W.2d at 560; *Adams,* 848 S.W.2d at 187–88.

When, however, as here, a case has been fully tried on its merits, we do not focus on the burden shifting scheme described above. *Rubinstein v. Adm'rs of Tulane Educational Fund,* 218 F.3d 392, 402 (5th Cir.2000); *see Prestige Ford Co. v. Gilmore,* 56 S.W.3d 73, 82 n. 6 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Once the case has been submitted to the jury, the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* analysis is unimportant. *Travis v. Bd. of Regents of Univ. of Tex.,* 122 F.3d 259, 263 (5th Cir.1997). Instead, we inquire whether the record contains legally and factually sufficient evidence to support the jury's ultimate findings. *Rutherford v. Harris Cty., Tex.,* 197 F.3d 173, 180–81 (5th Cir. 1999); *Smith v. Berry Co.,* 165 F.3d 390, 394 (5th Cir.1999). Leal must show that disability discrimination was a motivating factor in Haggar's decision to terminate her. *See Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex.2001) (applying "motivating factor" as standard of causation in TCHRA unlawful practice claims); *see also Rutherford,* 197 F.3d at 180–81; *Travis,* 122 F.3d at 263. Discrimination may be proved by direct or circumstantial evidence. *Quantum Chem. Corp.,* 47 S.W.3d at 476; *Hartis v. Mason & Hanger Corp.,* 7 S.W.3d 700, 705 (Tex. App.-Amarillo 1999, no pet.).

*Disability*

In its first issue, Haggar contends that the evidence is legally insufficient to support the jury's finding in response to question one that Haggar discharged or discriminated against Leal in retaliation for her disability. Leal suffered from a work-related injury to her left hand which required surgery and substantial treatment. Haggar contended that it terminated Leal not because of the injury, but because of excessive absenteeism and Leal's failure to comply with Haggar's policy concerning absences from work.

In considering no evidence or legal sufficiency points of error, we consider only the evidence and inferences from the evidence favorable to the decision of the trier of fact, and disregard all evidence and inferences to the contrary. *See State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 42, 44 (Tex.1998); *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex. 1995). If more than a scintilla of evidence supports the challenged finding, the no evidence challenge must fail. *See General Motors Corp. v. Sanchez,* 997 S.W.2d 584, 588 (Tex.1999); *Mayberry v. Texas Dep't of Agric.,* 948 S.W.2d 312, 316 (Tex.App.-Austin 1997, pet. denied).

Considering only the evidence and inferences from the evidence favorable to the decision of the trier of fact, we determine that the jury had before it sufficient evidence to conclude that disability discrimination was a motivating factor in Haggar's decision to terminate Leal.

Leal worked for Haggar from 1979 until 1994 performing repetitive assembly-line work. In 1983, she was first diagnosed with carpel tunnel syndrome, which was successfully treated with surgery. Leal suffered a recurrence of this condition in 1993. Leal underwent substantial medical treatment and was generally given somewhat modified duties at Haggar. In the

spring and summer, two of her treating doctors concluded that she had reached maximum medical improvement and that she suffered a medical impairment or partial permanent disability. These physicians recommended surgery or continued modified duties, in one instance "for the rest of her life." Less than three months later, Haggar terminated Leal for alleged violations of its absenteeism policy.

Leal testified that while she was working for Haggar, her supervisors told her that she "was to leave the place for somebody else that was younger, because the ball of years on my back was getting [too] heavy for me to be working there any more," that it "was probably arthritis, rheumatism, since [she] was too old to perform any more." Leal testified that she asked why she had been terminated, and Bill Pitchford, the plant manager, told her that "It's too much, like this injury, supposedly you say that you hurt and this and that, it's going on too long. We cannot keep people like you around." At trial, Pitchford directly testified that he would not rehire Leal "[a]ssuming that she could not do a ten hour workday."

Based on the evidence, a reasonable jury could have concluded that Haggar believed that Leal had a substantially limiting impairment that she did not have or that she had a substantially limiting impairment when, in fact, the impairment was not so limiting. *Kiser*, 32 S.W.3d at 453.

■ Moreover, the jury had before it evidence from which it may have inferred that Haggar's stated reason for terminating Leal, excessive absenteeism and failure to comply with absentee policy, was pretextual. Under Haggar's policy, employees were required to notify the company within two days in the event of an absence, or their position was considered abandoned. Haggar terminated Leal following such a two-day absence, contending that

Leal failed to telephone the company regarding her absence. However, Leal and her daughter each testified that her daughter telephoned the company to obtain an excused absence.

Although work-related injuries were not supposed to count as absences under Haggar's policy, non-workers compensation injuries counted as absences. Leal testified that she incurred absences because her injury rendered her unable to work full days, the medications used to treat her carpel tunnel syndrome made her ill, and there were instances where she was unable to see a doctor or obtain a pass from the company "nurse." Thus, the jury may have concluded that Haggar's absenteeism policy penalized Leal for her injury.

If the legal sufficiency standard of review allowed for the consideration of evidence contrary to the jury's verdict, we would agree with Haggar that there was some evidence that it had a legitimate, non-discriminatory motive for terminating Leal. However, the standard of review does not extend to such evidence, and, in any event, the jury is the sole evaluator of the witnesses' credibility and entitled to resolve conflicts in the testimony as it sees fit. *Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex.1986); *Gorges Foodservice, Inc. v. Huerta*, 964 S.W.2d 656, 666 (Tex.App.–Corpus Christi 1997). The jury's verdict was supported by more than a scintilla of evidence. We conclude that Leal presented legally sufficient evidence to support the jury's finding that her disability was a motivating factor in Haggar's decision to discharge her. Haggar did not bring a factual sufficiency challenge so our review of this matter stops upon our conclusion that there was a scintilla of evidence to support the jury's finding.

■ Citing *Crown Life Ins. Co. v. Casteel*, Haggar argues that the trial court

erred in submitting a broad form issue allowing for a finding of liability if Haggar either discharged Leal or discriminated against her. *See Crown Life Ins. v. Casteel*, 22 S.W.3d 378, 388 (Tex.2000). Under *Crown Life*, when a single broad-form liability question erroneously commingles legally valid and legally invalid liability theories, the error is harmful when it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding. *Id.* at 389.

In the instant case, the charge included separate questions for retaliatory discharge, age discrimination, and disability discrimination. The jury's affirmative finding of liability was made in response to the third of these issues, which inquired "Was disability a motivating factor in HAGGAR APPAREL COMPANY'S decision to discharge or discriminate against MARIA O. LEAL?"

■ *Crown Life* is inapplicable to the instant situation because both termination and discrimination were legally valid theories regardless of the state of the evidence. Moreover, the holding in *Crown Life* does not apply unless the party seeking reversal and remand for charge error made a timely and specific objection to the inclusion of the contested question. *Crown Life Ins.*, 22 S.W.3d at 389–90. Haggar failed to object to the submission of this question on grounds that it allowed for two bases of liability.

The question at issue tracks the language of the Texas Pattern Jury Charge for unlawful employment practices. *See* STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES-BUSINESS, CONSUMER, EMPLOYMENT PJC 107.6 (2000). Moreover, this Court has previously held it appropriate to submit termination and discrimination in a single question. *See Southwestern Bell*

*Tel. Co. v. Garza*, 58 S.W.3d 214, 226 (Tex. App.-Corpus Christi 2001, no pet.).

We overrule Haggar's first issue.

*Lost Earnings and Employment Benefits*

■ In its second issue, Haggar contends that the evidence is legally insufficient to support the jury's finding that plaintiff suffered $43,000 in lost earnings and employment benefits in the past. According to the charge, the jury awarded Leal $43,700 for "lost earnings and employment benefits in the past between date of discharge or discriminatory event and today."

The trial court has discretion to award back pay as equitable relief in an age discrimination lawsuit. TEX. LAB.CODE ANN. § 21.258(b)(1) (Vernon 1996). However, in awarding back pay, the court must deduct interim earnings, workers' compensation benefits, and unemployment compensation benefits. TEX. LAB.CODE ANN. § 21.258(c) (Vernon 1996); *Stanley Stores, Inc.*, 909 S.W.2d at 563.

In the instant case, Leal testified that she earned $13,000 to $14,000 annually during her employment with Haggar, and further received health insurance and pension benefits. She was terminated in August of 1994, and the matter went to trial in April of 1999. In terms of interim earnings and other benefits, Leal testified that she worked for a childcare company for nine months; however, the record fails to reflect her payment. She further worked for a home health care service for a week and a half for $5.00 an hour. Even considering these interim earnings, we conclude that the evidence is legally sufficient to support the jury's award of $43,700 in lost earnings and employment benefits. Over four and one-half years elapsed from the time of Leal's termination and the time of trial. During that period of time, Leal could have earned as

much as $63,000. Taking into account Leal's interim earnings, the jury had discretion to award $43,700 as within the range of evidence presented at trial *See Mayberry v. Tex. Dept. of Agric.,* 948 S.W.2d 312, 317 (Tex.App.-Austin 1997, writ denied) (jury has the discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation).

■ Haggar also argues that the Haggar plant where Leal worked closed in May of 1997, and accordingly, any compensatory damages recoverable for lost pay ended as of the date the plant closed. Haggar thus argues that damages accruing between the plant closing and trial should be remitted. Haggar cites *Ewald v. Wornick Family Foods Corp.,* 878 S.W.2d 653, 661 (Tex.App.-Corpus Christi 1994, writ denied), for this proposition. In *Ewald,* the Court held that an employee could not recover compensatory damages for the period of time following the closure of the employer's plant. *Id. Ewald* is a summary judgment case, however, and is thus distinguishable from the instant jury trial.

Haggar's record citations fail to establish the closing date for its facility in Weslaco. However, even if the record were to establish the closing date, the basic fact that Haggar closed its Weslaco facility does not establish that Leal would have been terminated. Leal testified that she planned on working for Haggar until retirement age. The record shows that Haggar maintained multiple facilities in South Texas with thousands of employees. Moreover, the record shows that Haggar transferred at least some of its employees to other facilities. Haggar fails to cite any evidence showing that it would have termi-

nated Leal rather than transfer her to another plant. We find that the record evidence is insufficient to establish that Leal would have been terminated when Haggar closed its Weslaco facility. The jury's award of compensatory damages is supported by more than a scintilla of evidence. Again, Haggar brings only a legal sufficiency challenge to this finding, and no factual sufficiency challenge, so our review is concluded upon a finding that there is a scintilla of evidence to support the jury's finding. We therefore overrule Haggar's second issue.

### Compensatory Damages

■ In its third issue, Haggar contends that the evidence is legally insufficient to support the jury's findings that plaintiff suffered $8,000 in past compensatory damages, "which may include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses."

Plaintiffs may recover compensatory damages under the Texas Commission on Human Rights Act ("TCHRA"). TEX. LAB. CODE ANN. § 21.2585(a)(1) (Vernon 1996 & Supp.2002).[1] "Compensatory damages" include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses," but may not include back pay, interest on back pay, or other equitable relief authorized under section 21.258(b) of TCHRA. *See* TEX. LAB.CODE ANN. § 21.2585(c),(d) (Vernon 1996).

■ To support an award of mental anguish damages, a plaintiff must present either direct evidence of the nature, duration, and severity of her mental anguish, establishing a substantial interruption in

---

1. This section of the TCHRA was amended in 1999; however, the 1999 amendments do not affect section 21.2585 as applied to the in- stant case. *See* TEX. LAB.CODE ANN. § 21.2585 and historical note (Vernon Supp.2002).

her daily routine, or "evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Latham v. Castillo*, 972 S.W.2d 66, 70 (Tex.1998) (citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995)); *see Stevens v. Nat'l Educ. Ctrs., Inc.*, 11 S.W.3d 185, 185 (Tex. 2000); *Norwest Mtg., Inc. v. Salinas*, 999 S.W.2d 846, 862 (Tex.App.-Corpus Christi 1999, pet. denied).

In the instant case, Leal referred to her treatment by Haggar as "humiliation." She testified that "the way I was seemed like the whole world had ended for me," and that she "got very depressed." According to Leal, "I felt real—I just—mentally and physically I couldn't function right. I was, well, real angry...." She testified that her feelings affected her relationship with her children and her husband, and that she "just wanted to be left alone," and "anything they did was wrong." Leal further testified that her termination caused her to suffer insomnia.

■ The jury's finding that Leal suffered mental anguish is supported by more than a scintilla of evidence. *See, e.g., Southwestern Bell Tel. Co.*, 58 S.W.3d at 236 (evidence of anger, depression, financial concerns, and negative impact on familial relations sufficient to support award for mental anguish). Moreover, the jury may or may not have awarded the full amount for mental anguish, or may have awarded some amounts for pain and suffering, inconvenience, loss of enjoyment of life, or other nonpecuniary losses. A challenge to a multi-element damages award should address all of the elements and show that the evidence is insufficient to support the damages award considering all of the elements. *Price v. Short*, 931 S.W.2d 677, 688 (Tex.App.-Dallas 1996, no writ); *Greater Houston Transp. Co. v. Zrubeck*, 850 S.W.2d 579, 589 (Tex.App.-

Corpus Christi 1993, writ denied). While Haggar argues that there was no evidence of mental anguish, Haggar does not address evidence pertaining to other nonpecuniary damages. It would therefore be inappropriate for this Court to further analyze Haggar's challenge regarding Leal's compensatory damages because this would entail speculation about how the jury divided its award among the various elements comprising compensatory damages. *See Thomas v. Oldham*, 895 S.W.2d 352, 359–60 (Tex.1995); *Hernandez v. Am. Appliance Mfg. Corp.*, 827 S.W.2d 383, 389 (Tex.App.-Corpus Christi 1992, writ denied).

We overrule Haggar's third issue.

### *Attorney's Fees*

■ In its fourth issue, Haggar alleges that the trial court reversibly erred in allowing Leal to put on evidence of her attorney's fees after the jury verdict was received. Haggar first argues that Leal should not prevail on her disability claim as a matter of law, and is, therefore, ineligible for attorney's fees because she was not the "prevailing party."

In a proceeding under TCHRA, "a court may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Tex. Lab.Code Ann. § 21.259 (Vernon 1996). Because the Court has determined that Leal submitted sufficient evidence to support the verdict of disability discrimination, Leal is a prevailing party under the act. *Cf., Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 227 (Tex.App.-San Antonio 1998, pet. denied) (reversing award of attorney's fees where evidence of retaliatory discharge was legally and factually insufficient).

■ Haggar next argues that the issue of attorney's fees is a question of fact to be submitted to the jury; therefore, Leal

waived her claim to attorney's fees by not submitting this issue to the jury. However, the trial court is the proper authority to determine and award costs, including attorney's fees, in an action under TCHRA. *Gorges,* 964 S.W.2d at 673; *Borg–Warner Protective Servs. Corp. v. Flores,* 955 S.W.2d 861, 870 (Tex.App.-Corpus Christi 1997, no pet.).

Haggar's fourth issue is overruled.

### Legal Sufficiency of Attorney's Fees

In its fifth issue, Haggar contends that the evidence is legally insufficient to support the award of $158,520 in attorney's fees, or alternatively, is excessive as a matter of law. Specifically, Haggar contends that (1) Leal failed to provide sufficient proof and detail to justify the amount awarded, (2) the application of "enhancement" factors under a lodestar calculation was improper, and moreover, failed to justify the amount awarded, and (3) the court awarded Leal all of her incurred attorney's fees rather than requiring her to either segregate her attorneys' fees incurred in prosecuting the successful claim from those incurred in prosecuting her unsuccessful claims, or to discount her attorney's fees in light of the prevailing and non-prevailing claims.

We review a court-ordered award of attorney's fees for abuse of discretion. *Crouch v. Tenneco,* 853 S.W.2d 643, 646 (Tex.App.-Waco 1993, writ denied); *Dillard Dep't Stores, Inc. v. Gonzales,* 72 S.W.3d 398, 412 (Tex.App.–El Paso 2002 no pet. h.).

In the instant case, the attorney's fees were determined according to a "lodestar" calculation. The lodestar method is appropriate in calculating attorney's fees in employment discrimination cases. *Gorges,* 964 S.W.2d at 673; *Borg–Warner Protective Servs. Corp.,* 955 S.W.2d at 870. Under this method, the court must first determine the number of hours reasonably spent by counsel on the matter, then multiply those hours by an hourly rate the court deems reasonable for similarly complex, non-contingent work. *Borg–Warner,* 955 S.W.2d at 870; *see Gen. Motors Corp. v. Bloyed,* 916 S.W.2d 949, 960 (Tex.1996) (discussing lodestar award of attorney's fees in context of class actions). The resulting lodestar figure may then be adjusted upward or downward, taking into consideration certain factors known as multipliers, such as the complexity of the case, skill of the attorney, and contingent nature of the fee. *Borg–Warner,* 955 S.W.2d at 870. The El Paso court of appeals has recently adopted the *Johnson* factors in conducting this analysis. *See Dillard Dept. Stores, Inc.,* 72 S.W.3d at 412 (citing *Johnson v. Georgia Hwy. Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974)). These factors include (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the level of skill required, (4) the effect on other employment by the attorney, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorney, (10) the undesirability of the case, (11) the nature and length of the attorney's relationship with the client, and (12) awards in similar cases. *See id.* If some of these factors are accounted for the lodestar amount, they should not be considered when making adjustments. *Id.*

Aaron Pena testified that he spent 39 hours at an hourly rate of $200.00, comprising $7,800.00. Two other attorneys working on the case spent 475.50 hours at an hourly rate of $150.00, comprising $71,325.00. The paralegal staff spent "in excess" of 300 hours at $50.00 hourly, comprising $15,000.00. Thus, the total fees

expended on the instant suit comprised $94,125.00. Leal further requested that fees be enhanced by a multiplier of 2.0, for a total of $188,250.00. The judgment awarded Leal $158,250.00, or $30,000.00 less than the total amount of attorney's fees sought by Leal.

■■ Haggar first contends that Leal failed to provide sufficient proof and detail to justify the amount of attorney's fees awarded. Haggar argues that Leal failed to show "billing judgment," provided insufficiently detailed entries regarding attorney and paralegal time, and failed to correlate the job performed to the fees due. According to Haggar, the bills failed to show "write offs," many of the entries fail to indicate who performed the tasks, and many of the entries lack sufficient detail, such as "trial preparation."

As noted previously, Aaron Pena, Jr. testified regarding the specific amounts of time that he, his associate attorneys, and his paralegal staff spent on the case, differentiating the amount billed by levels of expertise. Further, Pena produced his attorney's fees statement. The statement is thirteen pages long, and spans a period of time from 1994 to 1999. The statement provides the date of service, a brief description of the task accomplished, and the amount of time spent on the task. Pena testified that the statement provided "accurate, contemporaneously made entries of attorney fee hours expended in this cause," and "reflects the date, purpose and hours for representation of the plaintiff." According to Pena, the statement was a record made in the regular course of his business made at or near the time or reasonably soon thereafter. Pena testified that the work performed was reasonable and necessary.

The documentary and testimonial evidence substantiating Leal's attorney's fees was sufficiently detailed.

■■ Haggar next argues that application of "enhancement" factors under a lodestar calculation was improper, and moreover, failed to justify the amount awarded. As noted previously, the lodestar method is appropriate in calculating attorney's fees in employment discrimination cases. *Gorges,* 964 S.W.2d at 673; *Borg–Warner Protective Servs. Corp.,* 955 S.W.2d at 870. The instant case was complex, involving several theories of recovery and a great deal of evidence. The record reveals that the parties engaged in substantial discovery and held numerous pretrial hearings. Pretrial hearings and the trial itself lasted more than two and one half weeks, and included testimony from more than twenty witnesses. Pena testified regarding his expertise in employment law cases, and that the hourly fees charged were reasonable and customary. Pena testified that he had a contingent fee contract with Leal. Pena further testified about the structural problems inherent in representing plaintiffs in employment law cases and the economic burdens inherent in such cases.

We conclude that the trial court did not abuse its discretion in awarding attorney's fees. Although the amount awarded exceeded the amount recovered by Leal, this factor alone is not dispositive, and a review of the entirety of the factors governing the award of attorney's fees could have allowed the trial court to enhance the lodestar amount of attorney's fees. *See Wal–Mart Stores, Inc. v. Itz,* 21 S.W.3d 456, 484 (Tex.App.-Austin 2000, pet. denied).

■■ Finally, Haggar complains that the trial court awarded Leal all of her incurred attorney's fees rather than requiring her to either segregate the fees incurred in prosecuting the successful claim from those incurred in prosecuting the unsuccessful claims, or to discount her

attorney's fees in light of the prevailing and non-prevailing claims. As an initial matter, we note that Haggar has provided the court with only one citation to an unpublished case to support its argument that Leal was required to segregate her attorney's fees among successful and unsuccessful claims. Generally, a party seeking an award of attorney's fees must show that the fees were incurred on a claim that allows recovery of such fees, and thus, is ordinarily required to segregate fees incurred on claims allowing recovery of such fees from those that do not. *Stewart Title Guar. Co. v. Aiello,* 941 S.W.2d 68, 73 (Tex.1997); *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991). However, when the claims are "dependent upon the same set of facts or circumstances and are thus intertwined to the point of being inseparable, the party suing for attorney's fees may recover the entire amount covering all claims." *Aiello,* 941 S.W.2d at 73; *Grace v. Duke,* 54 S.W.3d 338, 345 (Tex.App.-Austin 2001, pet. denied). When the issues are integrally related to the claims upon which recovery of attorney's fees is based, full recovery of attorney's fees should be allowed, even if some of the issues are also related to other matters. *See Aiello,* 941 S.W.2d at 73.

In the instant case, the issues raised in Leal's various claims stem from the same set of facts and circumstances. After reviewing the record, we conclude the trial court had a sufficient basis to conclude that the issues in each claim were so intertwined that segregation would have been impracticable. *See World Help v. Leisure Lifestyles, Inc.,* 977 S.W.2d 662, 684 (Tex. App.-Fort Worth 1998, pet. denied).

■ With regard to Haggar's suggested "discount" of the attorney's fees given the fact that Leal failed to succeed on all claims against Haggar, we note that the success or failure of claims is merely one of the factors affecting the lodestar figure itself. *See Borg–Warner,* 955 S.W.2d at 870.

We overrule Haggar's fifth issue. Having overruled each of Haggar's issues on appeal, the judgment of the trial court is affirmed.