COLUMBIA PLAZA MEDICAL CENTER OF FORT WORTH SUBSIDIARY, L.P.




COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-394-CV
 
COLUMBIA PLAZA MEDICAL CENTER       
           
           
           
        APPELLANT
OF FORT WORTH SUBSIDIARY, L.P.
V.
CAROL SZUREK                                                                          
      
APPELLEE
------------
FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY
------------
OPINION
------------
I. Introduction
On November 13, 1998, appellee Carol
Szurek filed suit against appellant Columbia Plaza Medical Center of Fort Worth
Subsidiary, L.P. ("Columbia") for employment discrimination based on
her perceived disability, pursuant to the Texas Commission on Human Rights Act
["TCHRA"].(1) Tex. Labor Code Ann. §
21.002(6) (Vernon Supp. 2003). The jury found that Columbia regarded Szurek as
having a disability that substantially limited her ability to perform a broad
class of jobs and that it discriminated against her based on this perceived
disability. The jury also awarded Szurek $72,000 in damages, and the trial court
rendered judgment accordingly. We reverse and render.
II. Factual Background
In 1986, Szurek began working for St.
Joseph's Hospital as a medical technologist in its microbiology department. St.
Joseph's merged with Columbia in 1994, and its facilities closed in July 1995.
Szurek then began working at Columbia Plaza Medical Center.
Because of budgetary issues, Columbia
required medical technologists to cross-train in a second area of the hospital.
Szurek cross-trained in the hematology department, which required her to work
more time on her feet than in the microbiology department. An average eight-hour
shift in microbiology could involve anywhere from forty-five minutes to two
hours of walking and standing to as much as forty percent of the entire shift
walking and standing.(2) Medical technologists
were also required to spend part of one shift per month moving throughout the
hospital collecting blood.
On February 14, 1996, Szurek had foot
surgery for heel spurs and took six weeks off from her position with Columbia to
recover. Before she returned, she told her supervisor, Gail Hightower, that she
could stand for only ten to twenty minutes and needed significant periods of
rest. Further, after the recovery period, Dr. Lawrence Warren, Szurek's
podiatrist, allowed her to return to work on condition that she perform
sedentary duties only pending full recovery. As a result of this restriction,
Columbia limited Szurek to working only in the microbiology department. While
this position was not completely sedentary, it involved less standing and
walking than working in the hematology department. Szurek returned to work on
April 1, 1996.
In July, Hightower asked Szurek to obtain
a status report on her recovery from Dr. Warren. In a letter dated August 7,
1996, Dr. Warren stated that Szurek had reached a "recovery plateau."
Although Szurek had improved since her surgery, Dr. Warren stated that she
continued to have foot and ankle pain, and as a result, "it is necessary
that [she] perform sedentary activities at work for a period of time for three
months." Dr. Warren explained that he would re-evaluate her condition after
three months, but warned that altering from sedentary work "could result in
loss of the improvement that has been accomplished."
Based on Dr. Warren's letter, Connie Sims,
Columbia's Employee Health Coordinator, looked into Szurek's working conditions
in the microbiology lab and determined that there were no completely sedentary
positions available in the lab, including the position Szurek had filled since
her return. Sims testified that she interpreted Dr. Warren's letter to state
that Szurek's recovery plateau was the result of her performing nonsedentary
work. As a result, in order to avoid risking a set-back in Szurek's recovery,
Sims believed that Szurek could not work in microbiology until further notice
from her doctor.
Sims sent a memorandum to Paul Benson,
Columbia's Vice President of Human Resources, explaining her interpretation of
Dr. Warren's letter. In the memo, Sims suggested that Szurek be placed on a
leave of absence for "three months AND until a full release is given by her
attending physician." She stated that there were no sedentary positions in
the microbiology department and that the department was not required to
accommodate for a "temporary restriction."
Based on this memo and a conversation with
those in charge of the microbiology department, Benson placed Szurek on a
three-month leave of absence, fully expecting that she would recover and return
to work. Benson testified that he did not perceive Szurek as permanently
disabled or that she was asking for permanent accommodations. According to
Benson, all the information he had reviewed suggested she was recovering from
surgery and was under a temporary condition, not a permanent disability. Thus,
Benson did not believe that Columbia was required to accommodate her because of
her "temporary impairment."
On November 15, 1996, Szurek filed a claim
with the Fort Worth Human Relations Commission and the Equal Employment
Opportunity Commission, alleging that Columbia had discriminated against her
based on a "perceived disability." After an investigation, the Fort
Worth Human Relations Commission determined that there was no evidence of
discrimination. The EEOC, on the other hand, determined that there was
reasonable cause to believe Columbia had discriminated against Szurek when it
failed to accommodate her "perceived disability."
In the beginning of December 1996,
Columbia contacted Szurek about returning to work. Szurek then met with Sims,
Hightower, and Betty West, an employee in the human resources department, and
was asked if she would consider cross-training in the blood bank, which involved
less standing and walking than hematology. After agreeing to rotate between
microbiology and the blood bank, Szurek returned to work at Columbia on March
27, 1997. She continued to work at Columbia for another year without incident,
until she resigned from her position with Columbia, allegedly over a salary
dispute.
III. Perceived Disability
Discrimination
In Columbia's first issue, it argues the
trial court erred in not granting its motion for directed verdict on Szurek's
perceived disability cause of action. It claims there is no evidence in the
record supporting a finding that it involuntarily placed Szurek on a leave of
absence because it perceived that she suffered from a disability as defined
under the TCHRA.
In determining a "no-evidence"
issue, we are to consider only the evidence and inferences that tend to support
the finding and disregard all evidence and inferences to the contrary. Bradford
v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Cont'l Coffee Prods. Co. v.
Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); In re King's Estate, 150
Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence
is legally sufficient to support the finding. Cazarez, 937 S.W.2d at
450; Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).
A "no-evidence" issue may only
be sustained when the record discloses one of the following: (1) a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere scintilla
of evidence; or (4) the evidence establishes conclusively the opposite of a
vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334
(Tex. 1998) (citing Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 TEX.
L. REV. 361, 362-63
(1960)), cert. denied, 526 U.S. 1040 (1999). There is some evidence
when the proof supplies a reasonable basis on which reasonable minds may reach
different conclusions about the existence of the vital fact. Orozco v.
Sander, 824 S.W.2d 555, 556 (Tex. 1992).
Under section 21.002 of the labor code, a
disability is defined as "a mental or physical impairment that
substantially limits at least one major life activity of that individual, a
record of such an impairment, or being regarded as having such an impairment."
Tex. Labor Code Ann. § 21.002(6) (emphasis added). A "major life
activity" is considered akin to "caring for oneself, performing manual
tasks, walking, seeing, hearing, speaking, breathing, learning, and
working." Union Carbide Corp. v. Mayfield, 66 S.W.3d 354, 360
(Tex. App.--Corpus Christi 2001, pet. denied).
The Texas Supreme Court has stated that a
disability as contemplated by the TCHRA "must be one which is generally
perceived as severely limiting [the plaintiff] in performing work-related
functions in general." Chevron Corp. v. Redmon, 745 S.W.2d 314,
318 (Tex. 1987). The Redmon court further stated:

        
 An examination of the entire Act in the Human Resources Code reveals that the
 legislature was concerned with those physical and mental defects which are
 serious enough to affect a person's use of public facilities and common
 carriers, ability to obtain housing, and the ability to cross the street. The
 intent of the Act was to protect those impaired to the point that they might
 not be able to participate in the social or economic life of the state,
 achieve independence, or become gainfully employed, without this protection.
 The legislature obviously was not concerned with minor physical or mental
 defects.

Id. at 317. In determining if a
person is substantially limited in a major life activity we consider: (1) the
nature and severity of the impairment; (2) the duration or expected duration of
the impairment; and (3) the permanent or long-term impact, or the expected
permanent or long-term impact, of or resulting from the impairment. Union
Carbide Corp., 66 S.W.3d at 360; Garcia v. Allen, 28 S.W.3d 587,
596 (Tex. App.--Corpus Christi 2000, pet. denied); Norwood v. Litwin Eng'rs
& Constructors, Inc., 962 S.W.2d 220, 224 (Tex. App.--Houston [1st
Dist.] 1998, pet. denied) (quoting 29 C.F.R. § 1630.2(j)(2) (1995)). To be
considered a disability, the "impairment's impact must . . . be permanent
or long-term." Toyota Motor Mfg., Inc. v. Williams, 534 U.S. 184,
122 S. Ct. 681, 691 (2002); see also Hamilton v. Southwestern Bell Tel. Co.,
136 F.3d 1047, 1051 (5th Cir. 1998) ("We have noted that '[t]he EEOC
regulations provide that temporary, non-chronic impairments of short duration,
with little or no permanent long-term impact, are usually not
disabilities.'") (quoting Rogers v. Int'l Marine Terminals, Inc.,
87 F.3d 755, 759 (5th Cir. 1996)); Garcia, 28 S.W.3d at 596 ("In
determining if one is substantially limited in a major life activity," one
factor to consider is the "duration or expected duration of the
impairment.").
Under the TCHRA, an individual need not
actually have an actual physical impairment as defined above in order to state a
claim, as long as that individual is "regarded as having such an
impairment." Tex. Labor Code Ann. § 21.002(6); see also Francis v.
City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997) (discussing the Americans
with Disabilities Act ("ADA") and the federal Rehabilitation Act of
1973 ("RHA")). Rather, an individual is covered by the "regarded
as" prong of the definition of disability in the TCHRA if she "has
none of the impairments defined in [the definition of the term 'impairment'] but
is treated by a covered entity as having a substantially limiting
impairment."(3) Francis, 129 F.3d
at 284 (quoting 29 C.F.R. § 1630.2(l) (involving the ADA)). As a result, we
look to the employer's perception of the employee, which involves a question of
intent, not to whether the employee has an actual disability. See, e.g., id.
In determining what an employer perceived,
a plaintiff must allege and show that his employer regarded him as having an
"impairment" within the meaning of the applicable disability statute,
in this case, the TCHRA. See Bailey v. Georgia-Pac. Corp., 306 F.3d
1162,1169 (1st Cir. 2002); Rinehimer v. Cemcolift, Inc., 292 F.3d 375,
380-81 (3d Cir. 2002); Francis, 129 F.3d at 286; Andrews v. Ohio,
104 F.3d 803, 809-10 (6th Cir. 1997). A plaintiff cannot state a claim under the
"regarded as" prong simply by alleging that the employer believes some
physical condition, such as height, weight, or hair color, renders the plaintiff
disabled. Francis, 129 F.3d at 285. Rather, the plaintiff must show
that the employer believed, however erroneously, that the plaintiff suffered
from an "impairment" that, if it truly existed, would be covered under
the statutes and that the employer discriminated against the plaintiff on that
basis. See id.; Andrews, 104 F.3d at 810. Thus, to be
considered "disabled" under the "regarded as" prong, a
plaintiff must show that the employer regarded the employee to be suffering from
an impairment within the meaning of the TCHRA, not just that the employer
believed the employee to be somehow disabled.
A temporary impairment, such as
recuperation from surgery, will generally not qualify as a disability. See,
e.g., Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 468 (4th Cir.)
(citing 29 C.F.R. § 1630.2(j)), cert. denied, 123 S. Ct. 122 (2002).
An impairment simply cannot be a substantial limitation on a major life activity
if it is expected to improve in a relatively short period of time. Id.
(relying on Toyota Motor Mfg., 534 U.S. 184, 122 S. Ct. at 691). The
United States Supreme Court has also held that corrective measures must be taken
into account when evaluating an individual's impairment. Sutton v. United
Air Lines, Inc., 527 U.S. 471, 482, 488-89, 119 S. Ct. 2139, 2146-47,
2149-50 (1999). As the Fourth Circuit has explained, "If an individual's
ability to correct an impairment must be considered, it seems clear that the
individual's likelihood of recovery from a temporary impairment must also be
considered." Pollard, 281 F.3d at 468. Several federal courts have
taken this view. See, e.g., Gutridge v. Clure, 153 F.3d 898, 901-02
(8th Cir. 1998) (holding that plaintiff's inability to work while recovering
from wrist and elbow surgery did not qualify as a disability under the ADA and
noting that "the ADA requires permanent or long-term impairment"), cert.
denied, 526 U.S. 1113 (1999); Heintzelman v. Runyon, 120 F.3d 143,
144-45 (8th Cir. 1997) (holding same with regard to a temporary back injury); Rogers,
87 F.3d at 759 (holding same with regard to recovery from ankle injury and
surgery); McDonald v. Pennsylvania, 62 F.3d 92, 95-96 (3d Cir. 1995)
(holding same with regard to recuperation from abdominal surgery); Evans v.
City of Dallas, 861 F.2d 846, 852-53 (5th Cir. 1988) (holding same under
the Rehabilitation Act of 1973 with respect to inability to work due to knee
surgery).
While we presume that temporary
impairments do not qualify as disabilities, we still must examine temporary
conditions on a case-by-case basis. Pollard, 281 F.3d at 468.
"Temporary disabilities present a spectrum of cases and at some point the
duration of an impairment could be so long that it cannot properly be
characterized as temporary." Id. Factors we consider in
determining whether the temporary condition may be perceived as a substantial
limitation include the severity of the particular impairment, the length of time
the impairment was expected to last, and the likelihood that the impairment
would be ameliorated over time. Id. An approximate three-month period
of recovery following surgery for heel spurs is not so long a period of time
that it could be considered permanent. See Sanders v. Arneson Prods., Inc.,
91 F.3d 1351, 1354 (9th Cir. 1996) (holding plaintiff's four-month temporary
impairment was too brief to be a "disability"), cert. denied,
520 U.S. 1116 (1997).
The evidence in this case shows that
Columbia at most perceived that Szureck was recovering from a temporary
impairment, which resulted from her surgery for spurs. Columbia officials
believed Szurek would be able to return to her normal working routine in
approximately three months, or at least when Dr. Warren gave her clearance to
return to nonsedentary duties. The fact that Columbia officials perceived that
her "recovery plateau" prevented her from doing the physical
requirements of her current position and all nonsedentary positions does not
show that they regarded her as having a disability as defined under the statute.
The evidence shows that Columbia officials saw the "plateau" as
temporary, which could be overcome in a matter of months, but could not be
overcome if Szurek continued to work in nonsedentary positions against her
doctor's advice. Dr. Warren's letter, which Columbia was entitled to rely on in
making decisions regarding what Szurek's impairment entailed and whether she
could continue to work in certain positions, supported this conclusion. See
Rogers, 87 F.3d at 760 n.3; Rios v. Ind. Bayer Corp., 965 F. Supp.
919, 924 (S.D. Tex. 1997).
Szurek did not introduce or present to
this court evidence showing that Columbia perceived her injuries to be anything
other than temporary. Further, there is no evidence indicating that Columbia
believed there would be any long-term or permanent impact resulting from
Szurek's impairment. Because a temporary impairment is not considered a
"substantially limiting impairment," and because Columbia perceived
Szurek's impairment as temporary, there is no evidence that Columbia placed
Szurek on the leave of absence because it regarded her as disabled. See
Rinehimer, 292 F.3d at 380-81 (holding employer did not regard employee as
disabled where employer thought employee suffered from pneumonia, which is a
temporary condition not protected by the ADA); Sutton v. Lader, 185
F.3d 1203, 1209 (11th Cir. 1999) (holding employer that prevented employee from
returning to work until physician provided medical release did not regard
employee who was recovering from heart surgery as disabled under RHA, stating
"employee who is perceived by his employer as having only a temporary
incapacity to perform the essential functions of his job is not perceived as
'disabled'"). Thus, we hold the trial court erred in denying Columbia's
motion for directed verdict and sustain issue one.(4)
In light of our decision on issue one, there is no need for this court to
address Columbia's remaining issues on appeal. See Tex. R. App. P.
47.1.
IV. Conclusion
Having sustained Columbia's no-evidence
issue, it is our duty to render judgment for Columbia because that is the
judgment the trial court should have rendered. See TEX.
R. APP. P. 43.3; Vista
Chevrolet, Inc. v. Lewis, 709 S.W.2d 176, 176 (Tex. 1986) (quoting
Nat'l Life & Accident Ins. Co. v. Blagg, 438 S.W.2d 905, 909 (Tex.
1969)). Thus, we reverse the trial court's judgment and render judgment for
Columbia.
 
  
                                                                    SAM
J. DAY
  
                                                                    JUSTICE
 
PANEL B: CAYCE, C.J.; DAY and HOLMAN, JJ.
[DELIVERED: MARCH 6, 2003]

1. Szurek did not bring claims under federal law, and the
trial court granted Columbia's motion for directed verdict on her actual
disability cause of action.
2. Szurek testified that an eight-hour shift in the
microbiology department involved anywhere from forty-five minutes to two hours
of walking and standing throughout the day. Other witnesses testified that an
employee could spend approximately forty percent of the shift walking and
standing.
3. Stated differently, "an employee is also regarded
as having a substantially limiting impairment if his employer mistakenly
believes the employee (1) has a physical impairment that substantially limits
one or more major life activities, or (2) an actual, non-limiting impairment
substantially limits one or more major life activities." Haggar Apparel
Co. v. Leal, No. 13-00-275-CV, slip op. at 2, 2002 WL 31478172, at *2 (Tex.
App.--Corpus Christi Nov. 7, 2002, pet. filed). In other words, "[t]he
employer must believe either that one has a substantially limiting impairment
that one does not have or that one has a substantially limiting impairment when,
in fact, the impairment is not so limiting." Id.
4. Although the EEOC's determination of reasonable cause
to believe that discrimination occurred was introduced into evidence, we accord
it no weight in this case because the determination of the EEOC is based on an
incorrect statement of the law. In its determination, the EEOC stated that
because its investigation revealed that Columbia failed to accommodate Szurek
once it learned that Dr. Warren recommended she perform sedentary duties only,
Columbia "perceived [Szurek] to have a disability that kept her from
performing any jobs within their company." The duty to provide reasonable
accommodations, however, "arises only when the individual is [actually]
disabled; no such duty arises when the individual merely is 'regarded as' being
disabled." Cannizzaro v. Neiman Marcus, Inc., 979 F. Supp. 465,
475 (N.D. Tex. 1997). Because the EEOC's determination was based on an erroneous
statement of the law, and because the independent facts at trial show no
evidence of a "perceived disability," we conclude the EEOC letter does
not amount to more than a scintilla of evidence. Cf. Sims v. Oklahoma ex.
rel. Dep't of Mental Health, 165 F.3d 1321, 1331 (10th Cir.), cert.
denied, 528 U.S. 815 (1999) ("[W]hen the independent facts before the
district court judge [on a motion for summary judgment] fail to establish a
genuine issue of material fact, a favorable EEOC letter of determination does
not create one.").